## YOUNGBLOOD v. HENSON.

No. 6141.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

Olin D. Moore, of Many, for appellant.

R. A. Fraser, of Many, and Cawthorn & Golsan, of Mansfield, for appellee.

TALIAFERRO, Judge.

Plaintiff sues on open account for the price of fuel oil sold and delivered to defendant and used by him in drilling a well in search of oil. He asserts that he has a furnisher's lien and privilege on the well, the mineral lease on which it is located, and the rig and other machinery, equipment, appurtenances, etc., employed in

drilling the well, the evidence of which, he avers, has been duly registered in the mortgage records of Sabine Parish. He also alleges that defendant is a non-resident of the state and sued out a writ of attachment under which said property was seized. He prays that said lien and privilege be recognized upon said property and that the writ of attachment be maintained against same.

Defendant excepted to the jurisdiction of the court ratione personae, but was overruled. This ruling is not complained of here. Answering, defendant denies all the allegations of the petition save wherein it is alleged that he is a non-resident. Further answering, he admits that between May 31, 1937, and June 15, 1937, he did purchase some fuel oil from plaintiff, which was consumed in drilling said well, but avers that it contained more than fifty per cent (50%) water and base settlement; that because of this excessive foreign content, the oil would not burn properly and adequate steam pressure could not, for that reason, be maintained, resulting in intermittent cessation of drilling for two-thirds of the time; that he did not agree to pay for the water and base settlement and ought not be required to do so.

Defendant further avers that plaintiff is indebted unto him to the extent of One Hundred ($100) Dollars, with five per cent (5%) interest from January 19, 1938, evidenced by judgment rendered in his favor by the District Court of Sabine Parish. He prays that plaintiff's demands be rejected, and, in the alternative, should judgment for any amount be rendered against him, that credit thereon for said One Hundred ($100) Dollars, with interest be given.

There was judgment for plaintiff for the full amount sued for, less the credit prayed for by defendant; the lien and privilege asserted and that resulting from the levy of the writ of attachment were recognized and declared enforceable against the property attached. Defendant prosecutes this appeal.

■ The account sued on covers six hundred (600) barrels of fuel oil at $1.30 per barrel; fifty (50) barrels at $1.35 per barrel and fifty (50) barrels at $1.15 per barrel. The period covered is from May 31, 1937, to June 15, 1937.

Defendant does not now deny that plaintiff delivered fuel oil to the well in the quantity sued for. He does contend that the agreed price for all the oil was $1.15 per barrel. On this issue the evidence is decidedly in favor of plaintiff.

When each delivery of oil was made, defendant or one of his employees receipted therefor by signing a charge slip made up by plaintiff or one of his employees. Several of these slips were signed by defendant himself. They show that the oil thereon described was charged at $1.30 per barrel. No question as to the correctness of these prices was raised until this suit was filed. The difference in the prices is satisfactorily accounted for by plaintiff.

The main issue in controversy has to do with the quality of the oil and not the quantity or its price.

Plaintiff's version of the dealings between himself and defendant is that he owned some fuel oil in a pit at his refinery near Converse, Louisiana, which he agreed to sell and deliver to the site of defendant's well for $1.15 per barrel. He delivered one hundred twenty-five (125) gallons at this price, which were paid for. This was in May. This quantity of oil was sufficient to create steam for the well to a depth of approximately 1,600 feet. Something happened, and the hole at that depth was lost.

Defendant determined to drill a second well on the same lease and skidded the derrick and rig over a short distance to a new site. Plaintiff says that about this time (May 31st), defendant called him on the 'phone and asked him to supply him (defendant) with oil to drill the second well, but that he informed defendant that his local supply was about exhausted and he could not accommodate him. Defendant persisted and plaintiff finally consented to help him out, with the understanding that since the greater part of the oil would have to be obtained farther away, the delivered price would be more than that at which local oil had been delivered to him. Defendant assented.

After the second understanding between plaintiff and defendant, the former proceeded to fill two (2) 250-barrel tanks at the site of the second well, and, from time to time as the tanks' levels were lowered, he would put more in them, until 700 barrels had been delivered. This oil was almost entirely purchased from others. Some of it was bought in the City of Shreveport.

Defendant was absent when the tanks were first filled. He was present later

on when several of the last deliveries were made and receipted for them. He refused one delivery as being too inferior and took a sample therefrom. This sample, he testified, revealed, upon analyzation, sixty-four per cent (64%) water and base settlement. He contends that all of the unpaid for oil was at least fifty per cent (50%) water and base settlement, and on this basis argues that he should not be forced to pay more than one-half of the account sued on.

We are convinced that some of the oil in question did contain an excessive proportion of water and base settlement, but we do not think all of it was so affected. If these elements made up one-half of it, it is certain no fire in the boilers could have been maintained for any length of time sufficiently to have produced the steam pressure necessary to operate the drilling machinery. It is shown that fuel oil may carry as much as from six per cent (6%) to ten per cent (10%) water and base settlement and still be efficient as a fuel. When beyond this percentage, the fire is so irregular that it will not produce dependable steam supply.

It is also shown that on several occasions the work was stopped because the oil in the boilers would not burn. Exactly the number of times this occurred, or the duration of each, is not established. The second well was drilled and completed within fifteen (15) days. It would appear that not a great deal of time was lost.

The fact remains that the oil was delivered to defendant's well and he consumed all of it in drilling operations. It is shown that a well of this character and location requires from five hundred (500) to seven hundred (700) barrels of fuel oil to drill it; circumstances arise in particular cases which necessitate a greater consumption and in some a lesser quantity.

Plaintiff, accompanied by his wife, called upon defendant on two different times at the site of a well he was drilling in Texas, and requested payment of the account. He did not then register any objection to its correctness, but, on the contrary, offered to give his note to liquidate it.

We are inclined to believe that the defense now urged is an afterthought. The trial judge likely thought so.

■ At all events, defendant has not shown that the oil delivered to him contained fifty per cent (50%) of water and base settlement, nor any other definite percentage beyond the quantity which does not materially affect its efficacy as a fuel. It would have been useless for fuel if defendant's testimony is correct; yet, it was so used.

The testimony in the case is extremely contradictory. In material respects it cannot be reconciled. This being true, the trial judge's solution of the factual questions should and does have great weight. No manifest error appears.

■ Plaintiff sued for Nine Hundred Seventy ($970) Dollars and was given judgment for that amount, but error in this respect is patent on the face of the record. The account attached to the petition shows the true amount due thereon to be Nine Hundred Five ($905) Dollars. Plaintiff testified that the account is correct. The judgment will have to be amended to correct this error.

■ For the reasons herein assigned, the principal amount of the judgment appealed from is reduced to Nine Hundred Five ($905) Dollars, and, as thus amended, the judgment, in all other respects, is affirmed. Defendant is cast for all costs.